**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **KIMBERLY A. WESTMORELAND,** | **CASE NO. 2:04-cv-340** |
| | **CRIM. NO. 2:03-cr-139** |
| **Petitioner,** | |
| v. | **JUDGE SMITH** |
| | **MAGISTRATE JUDGE KEMP** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**I. PROCEDURAL HISTORY**

On September 18, 2003, petitioner was charged by information with conspiracy to distribute in excess of 50 grams of crack cocaine, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A)(iii), and 846, and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(i). On October 8, 2003, while represented by counsel, petitioner waived her right to prosecution by indictment, and pleaded guilty. Docs. #8,9. On January 20, 2004, the government filed a motion for downward departure pursuant to U.S.S.G. §5K1.1. On January 21, 2004, petitioner was sentenced to a cumulative term of 180 months incarceration. Doc. #23. On April 29,

2004, petitioner filed the instant *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C §2255. She asserts as follows:

> Counsel's performance fell below an objective standard of reasonableness.
>
> When I got arrested at my mom's, I called my attorney and told him that they were coming to arrest me and he told me there was nothing he could do. While I was incarcerated, he never took my calls from the jail or my family's calls from their home or work. Neither my family [n]or I was notified of my sentencing date so, therefore, I was not prepared and my family was not there for me. My attorney came into the courtroom and sat at the United States Attorney's table and never once came and talked to me about what was going to happen. One of the U.S. Marshall's that took me to court made a statement saying, "Why hasn't your attorney come over and talked to you?" I stated back with I really did not know. After everything was over, he still did not say anything to me, so I asked him if he was going to come and talk to me. He stated that he would be there. He never came to talk to me at the federal building or at the jail. I tried to call him from the jail again and my mom tried from her home and he would not take the time for either of our telephone calls. He never did contact my family at any given time. I was never given any kind of paperwork or information on my case, except for my presentence report. No status or category information.

It is the position of the respondent that petitioner's claim is without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of

competence demanded of attorneys in criminal cases.  *Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

The record in this case indicates that, on October 8, 2003, at the time of petitioner's guilty plea, the following discussion transpired:

> COURT: Have you read a copy of the Information, Ms. Westmoreland?
>
> DEFENDANT: Yes, I have, sir.
>
> COURT: You have discussed it with your lawyer?
>
> DEFENDANT: Yes, sir.
>
> COURT: Has he explained the offense against the United States?  You have to say and speak out.
>
> DEFENDANT: Yes, he has, yes, sir.
>
> COURT: And do you understand the nature and meaning of the offense charged in the Information?
>
> DEFENDANT: I understand sir.
>
> COURT: Based on your discussions with this defendant, Mr. Cicero, do you believe that she understands the nature and meaning of the offense?
>
> MR. CICERO: She does, Your Honor.  We have spent many hours going over this.

*Transcript,* October 8, 2003, at 4.

> COURT: Since you wish to waive your right to have this case

3

>presented to a Grand Jury, you must sign a consent here in open court. Do you understand that?
>
>DEFENDANT: I understand, sir.
>
>COURT: Do you have the waiver, Mr. Cicero?
>
>MR. CICERO: Yes, sir, I do.
>
>COURT: Have you explained it to her? Has she signed it?
>
>MR. CICERO: I have, Your Honor, and she has signed it as has myself.

*Id.*, at 6.

>COURT: ... [A]gain, have you received a copy of the Information pending against your, that is the written charges made against you?
>
>DEFENDANT: Yes, I have.
>
>COURT: Have you fully discussed these charges and the case in general with your lawyer?
>
>DEFENDANT: Yes, I have.
>
>COURT: Are you fully satisfied with the counsel and representation and advice that your lawyer has given you about your case?
>
>DEFENDANT: Yes, I am.
>
>COURT: ... Would counsel for the government please summarize the agreement for the record?
>
>MR. DEVILLERS: Yes, Your Honor.
>
>The defendant will enter into a plea of guilty to Counts 1 and 2 of the Information, which charges the defendant respectively with one count of conspiracy to distribute in excess of 50 grams of cocaine base, in violation of 21 United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii) and 846 and in Count 2 with using and carrying a firearm during and in relation to a drug trafficking crime, 18 United States Code, Section 924(c)(1)(A)(i).

4

The defendant understands that the penalties may be imposed pursuant to the guilty plea are as follows:

Count 1 is a mandatory minimum term of imprisonment of 10 years to a maximum term of life and a fine of $4 million and a five-year term of supervised release.

And Count 2 is a mandatory sentence of 5 years imprisonment to be served consecutively to the sentence imposed in Count 1 and an alternative fine of $250,000 and a three-year term of supervised release, and the defendant shall pay a $200 special assessment.

\*\*\*

For sentencing purposes, it is agreed between the parties that with respect to the Information, that the relevant conduct in this case is 240 grams of cocaine base.

The United States agrees that the defendant has accepted responsibility and is entitled to a three-level reduction for acceptance of responsibility. There is no basis for an upward departure, and all parties agree and understand that these provisions in this paragraph are not binding on the district court and the final determination as to all sentencing issues rests with the district court.

The defendant is aware that her sentence will be imposed in accordance with the Sentencing Guidelines and policy statements, and the defendant is aware that the Court has not yet determined a sentence. The defendant cannot withdraw a guilty plea based upon actual sentence. It is agreed that the Court can refuse to accept any provision of this agreement by the parties or its provisions.

And Your Honor, the United States agrees that if the defendant provides substantial assistance in the investigation and prosecution of others who have committed criminal offenses, the United States may move the Court for an appropriate departure of the otherwise applicable guideline range of the defendant's sentence.

There are no other agreements or promises between the parties.

COURT: Mr. Cicero, is this your understanding?

MR. CICERO: It is, Your Honor. We have gone over it at great length and have spent several hours in the satellite office here going

over all of this prior to executing this plea.  And Mr. DeVillers has provided me with a box of hours of tapes and CD roms that we have listened to.  I have given them to my client, and she has had an opportunity to review all of those prior to us executing this plea agreement.

COURT: All right.  Is this your understanding, Ms. Westmoreland?

DEFENDANT: Yes, it is, sir.

COURT: Do you understand that any agreements regarding a sentence to be recommended to the Court is not binding on the Court and that if I decline to follow your agreement and impose a higher sentence, you cannot withdraw your guilty plea simply because you do not like the sentence that the Court has imposed?  Do you understand that?

DEFENDANT: I understand, sir.

COURT: Has anyone, including an officer or agent of the government, made any promise other than the plea agreement that induced you to plead guilty?

DEFENDANT: No, they haven't.

COURT: Has anyone attempted in any way to force you to plead guilty?

DEFENDANT: No, sir.

\*\*\*

COURT: Do you understand that the potential penalty in this case is as follows: On Count Number 1, it is 10 years to life – that's a minimum of 10 years imprisonment – to life imprisonment, a $4 million fine, a $100 special assessment, which is mandatory, and five years of supervised release.  Do you understand?

DEFENDANT: I understand, sir.

COURT: The penalty for Count 2 is 5 years mandatory consecutive to Count Number 1.  That consecutive means that after you have served the sentence in Count Number 1, the sentence in Count Number 2 is tacked on or stacked onto that?  It is consecutive, it

6

comes after. And up to a $250,000 fine, a $100 special assessment and three years of supervised release.

DEFENDANT: I understand.

COURT: You should know that parole has been done away with under the Sentencing Guidelines, and that is that you must serve the full amount of the prison term to which you are sentenced. Following the service of your sentence, you will be subject to serve a term on supervised release.

\*\*\*

Do you understand that?

DEFENDANT: Yes, I understand, sir.

\*\*\*

COURT: Knowing the maximum penalties that the Court can impose, do you still wish to plead guilty?

DEFENDANT: Yes, I do, sir.

COURT: The United States Sentencing Commission has established guidelines for judges to follow in determining the sentence in a criminal case. Have you and your attorney talked about the Sentencing Commission Guidelines and how they might apply to your case and what your sentence could be?

DEFENDANT: I understand.

COURT: Have you done that? Have you talked about what your sentence could be?

DEFENDANT: Yes. Yes, I have sir.

COURT: On the penalty phase of this?

DEFENDANT: Yes, I have.

COURT: Okay. And you have explained that to her?

MR. CICERO: Thoroughly.

> COURT: All right.  Before you are sentenced, a Presentence Report will be prepared by the Probation Department.  You and the government will have an opportunity to challenge the facts and conclusions in this report, if you wish.  The Court will not determine your sentence until this process is completed.
>
> Also, the Court is not bound by any stipulation or agreement between you and the government as to the facts or conclusions or the sentence itself.  The Court will determine and decide these matters.  Do you understand this?
>
> DEFENDANT: Yes, I do.
>
> COURT: Do you understand that after it has been determined what level of penalty applies to the case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the Sentencing Guidelines?
>
> DEFENDANT: Yes, sir.
>
> COURT: Do you understand that if a sentence is more severe than you expected, you will still be bound by your guilty plea and you will have no right to withdraw it?
>
> DEFENDANT: Yes.

*Id.*, at 8-16.  Petitioner also signed a plea agreement, which explicitly set forth the terms of her guilty plea and the maximum penalties that she faced.  Doc. #4.  Petitioner was advised of all of the rights that she was waiving by virtue of her guilty plea, and at all times indicated that she understood.  Petitioner was also advised of the proof required to establish the charges against her.  Again, she indicated that she understood.  *Id.*, at 16-20.  Special Agent Kirk D. Howard summarized the evidence against petitioner as follows:

> Between August 27th, 2002 and November 19, 2002, Kimberly A. Westmoreland sold crack cocaine on eight separate occasions, totaling 240 grams to an undercover ATF agent.  These transactions took place at Ms. Westmoreland's residence of 786 Clinton Street in Columbus, Ohio.

During the September 24th transaction of 2002, Kim Westmoreland sold to an undercover agent 54 grams of crack, and the agent asked if she ever had any problems with others in the neighborhood, and Kim Westmoreland responded by pointing to a silver-gray colored Derringer pistol with black grips and said, quote, "They know they would get shot, end quote. Ms. Westmoreland further indicated that if that didn't stop them, she would go upstairs and get her 44.

The cocaine was submitted to the Columbus Police Department Crime Lab, resulting in the determination that, in fact, it was cocaine base, which is commonly known as crack. The total weight was 240 grams. These violations occurred in the City of Columbus, Franklin County and the Southern District of Ohio.

COURT: Thank you. Did you hear what ATF Agent Howard just said?

DEFENDANT: Yes, sir.

COURT: Is what he said accurate?

DEFENDANT: Yes, it is, sir.

COURT: Is it in any way incorrect? Now is your chance if it isn't?

DEFENDANT: No.

COURT: So it ended up in sales of crack cocaine which amounted to 240 grams?

DEFENDANT: Yes, it did.

COURT: And that's accurate?

DEFENDANT: (She nods.)

\*\*\*

COURT: Are you offering to plead guilty here today because you are, in fact, guilty of the offenses charged in the Information?

DEFENDANT: Yes, sir, I am.

COURT: And you do so of your own free will?

9

>DEFENDANT: Yes, sir, I am.

*Id*., at 20-22. Because petitioner was assisting the government, she was not incarcerated pending her sentencing hearing. *Id.,* at 24-25. Petitioner was sentenced on January 21, 2004. The following discussion took place at her sentencing hearing:

>COURT: Mr. Cicero, have you and your client read and discussed the Presentence Report prepared by the U.S. Probation Office?
>
>MR. CICERO: I have, Your Honor, and I sent that actually sometime ago to Kimberly and then I received something back from the Probation Department, asking me if there were any additions and corrections that I needed to note, there were none, and then they were notified of that, also.
>
>COURT: Okay. And Ms. Westmoreland, did you remember going over this report?
>
>DEFENDANT: Yes, I did, sir.
>
>COURT: Did you discuss it with your attorney?
>
>DEFENDANT: Yes, I did.
>
>COURT: Okay. And did you understand everything that you and your attorney discussed about the report?
>
>DEFENDANT: Yes, sir.
>
>COURT: And is there anything about the report that you did not understand?
>
>DEFENDANT: No, sir.
>
>COURT: Okay. Do you have any doubt, Mr. Cicero, as to your client's understanding of the report?
>
>DEFENDANT [SIC]: She understands it, Your Honor.
>
>\*\*\*
>
>MR. DEVILLERS: ... [W]e are asking for a reduction to the

> mandatory minimum in this case. Once the defendant was arrested, she did end up on that very day allowing agents to do certain things from her house, enabling them to get the supplier who was eventually convicted.
>
> \*\*\*
>
> COURT: Do you have any comment on the motion for a three-level reduction, Mr. Cicero?
>
> MR. CICERO: We don't oppose it, Your Honor.
>
> COURT: Okay. The Court grants the government's motion for a three-level downward departure. That would take the case from a – well, we started at a level 34 and it goes to a level 31 because of the acceptance of responsibility.
>
> And with the approval of the government's motion, that would take it from a 31 to a 28, Criminal History Category IV. The guideline range is 110 to 137 months.
>
> You may speak in mitigation, Mr. Cicero.
>
> MR. CICERO: Your Honor, we don't really have anything to say other than what has been said in the report. It really does speak for itself...
>
> COURT: Ms. Westmoreland, do you have anything to say before I sentence you?
>
> DEFENDANT: No, sir.

*Transcript,* January 21, 2004, at 2-5. Petitioner was sentenced to 120 months on count one, and 60 months on count two, such sentences to be served consecutively to each other, plus five years supervised release. *Id.*, at 5. The Court noted as follows when imposing sentence:

> The defendant is a 29-year old mother of two. Both children live with the defendant's mother. Ms. Westmoreland has a GED but is unemployed. The defendant's fiancee financially supports her. And the defendant relates that she completed the drug transactions to make money. Ms. Westmoreland regrets being involved in the instant offense, but however, the defendant has a lengthy prior record

>>for soliciting, improper handling of a firearm, and cocaine possession, among others.

*Id.*, at 7.

In view of the foregoing, this Court concludes that petitioner has failed to establish the ineffective assistance of counsel under either prong of the test set forth in *Strickland*. Contrary to petitioner's allegations, both petitioner and her attorney indicated at the time of her guilty plea, and at sentencing, that trial counsel had thoroughly discussed and reviewed with petitioner the charges against her, her guilty plea, sentencing ramifications, and contents of the presentence investigation report. *See supra*. Although given the opportunity to do so, petitioner never indicated that she had any questions regarding the proceedings, or any complaints about her attorney. To the contrary, petitioner indicated that she was satisfied with her attorney's performance.

>>[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)(citations omitted). Petitioner fails to indicate in what manner any other witnesses could have assisted in her behalf at sentencing. She likewise did not indicate at her sentencing hearing that she had any witnesses to present. The presentence investigation report outlined in detail her difficult childhood, early use of drugs and alcohol, and drug addiction. Further, pursuant to her guilty plea, petitioner's sentence exposure was substantially reduced. She received a two point reduction pursuant to U.S.S.G. §3E1.1(a) for her acceptance of responsibility, and a one point reduction pursuant to U.S.S.G. §3E1.1(b) for her timely notification

to authorities of her intention to enter a guilty plea. *Presentence Investigation Report*, ¶¶35, 36. Additionally, she obtained a three level reduction in her recommended guideline sentencing range, reducing her recommended sentence from 151-188 months to 110-137 months, pursuant to the government's motion under U.S.S.G. §5K1.1. *Transcript,* January 21, 2004, at 5. The Court imposed a 60 month consecutive sentence for her conviction on use of a firearm during and in relation to a drug trafficking crime pursuant to the required mandatory minimum for such offense. 18 U.S.C. §924(c)(1)(A)(i). Finally, it does not appear from the record that the government would have been unable to prove the charges against petitioner. Under such circumstances, it would not have been unreasonable for petitioner's attorney to recommend a guilty plea. Petitioner does not allege, nor does it appear from the record, that her plea was not knowing, intelligent, and voluntary.

In view of all of the foregoing, the Magistrate Judge concludes that petitioner's claim of ineffective assistance of counsel is without merit, and **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
                              /s/ Terence P. Kemp
                              United States Magistrate Judge
```